UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ANGEL D.,[1]<br><br>   Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>   Defendants. | Case No. 23-cv-04572-RMI<br><br>**ORDER REMANDING CASE**<br>Re: Dkt. Nos. 10, 16 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. *See* Admin. Rec. at 928-45.[2] Because Plaintiff sought review in this court following the ALJ's unfavorable decision, that decision was the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 7, 8), and the matter has been fully briefed (*see* dkts. 10, 16, 17). For the reasons stated below, this case is remanded for the calculation and payment of benefits.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in twenty-eight attachments to Docket Entry #9. *See* (dkts. 9-1 through 9-28).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**INTRODUCTION**

Plaintiff's disability case has been pending for more than seven years. *See* AR at 15. In June of 2017, Plaintiff filed an application for supplemental security income, alleging disability with an onset date of January 1, 2016. *Id*. Plaintiff subsequently added a claim for Title II disability and amended her disability onset date to June 2, 2017. *See id*. at 928-29. Following a hearing in November of 2018, her application was denied by the ALJ in December of 2018. *See id*. at 15-28. The ALJ's adverse decision was upheld by the Appeals Council in August of 2020. *Id*. at 1-6. Plaintiff then sought review in this court. *See id*. at 1063-71. However, before the case could be adjudicated on its merits, the Commissioner and Plaintiff stipulated that remand was necessary because various errors in the ALJ's decision were manifest. *See id*. at 1077-78. On July 12, 2021, the Honorable Alex Tse granted the Parties' stipulation and remanded the case with instructions for the ALJ to further develop the record, to further evaluate the medical evidence, to reassess Plaintiff's residual functional capacity, and to issue a new decision. *Id*. at 1077-79. In January of 2023, the same ALJ conduced another hearing (*see id*. at 957-1000), and, on May 9, 2023, he issued another decision, once again denying Plaintiff's disability application. *See id*. at 928-45.

Plaintiff then sought review in this court in September of 2023. *See* Compl. (dkt. 1) at 1-4. Plaintiff filed her merits briefing in December of 2023, this time asking for remand for the calculation and immediate payment of benefits. *See generally* Pl.'s Mot. (dkt. 10) at 25. Thereafter, Defendant filed responsive briefing and acknowledged (for the second time in the same case) that remand is necessary for further proceedings to allow the same ALJ to cure the errors in his second decision and to reevaluate the medical evidence and to reassess Plaintiff's residual functional capacity. *See* Def.'s Mot. (dkt. 16) at 3-9. Thus, both Parties seek remand – all that is in dispute is the nature of the remand.

## SUMMARY OF THE RELEVANT EVIDENCE

As set forth in detail below, during the inordinate amount of time that this matter has been pending, Plaintiff has undergone no fewer than six psychological examinations. The picture that appears from the sum of the reports that issued from these psychological examinations is disturbing, to put it mildly; the story of Plaintiff's childhood is a graphic account marked with trauma, abuse, and privation.

When Plaintiff was three, she was a witness to her father's death by heart attack – an early memory of disturbing imagery that she was never able to shake. *See* AR at 2656. As a pre-teen, she witnessed the near-death of her mother from being beaten with a hammer. *Id*. at 707. Due to her mother's substance abuse issues, Plaintiff eventually went to live with her grandmother as a young child. *Id*. at 2656. Given her history trauma, as a child, she was always a withdrawn, depressed, and anxious person. *Id*. Given these conditions, Plaintiff was forced to eventually abandon school due to her inability to cope and to deal with people. *Id*. at 708. When her grandmother passed away, Plaintiff moved into an apartment with her sister – she was 17 years old at the time – and, soon after moving in, Plaintiff was traumatized further when her uncle raped her sister and cut her throat, nearly killing her. *Id*. at 2656. In fact, between 2007 and 2010, Plaintiff lost no less than 22 friends and family members. *Id*. at 708. Included in this death toll was Plaintiff's best friend who was stabbed to death when she was eight months pregnant; her cousin and another uncle also died during this period; and, Plaintiff's brother burned to death when someone forced him at gunpoint to stay inside a burning building. *Id*. To compound these blows to

her psyche, for most of her twenties – between the 2007 and 2014 – Plaintiff suffered homelessness. *Id*. Then, in 2018, while driving a friend's car, Plaintiff was involved in a major automobile accident when a car that was attempting to evade the police during a high-speed chase collided with her car at a high rate of speed, causing it to spin around several times. *Id*. at 2657-58. As a result of the collision, Plaintiff sustained a head injury and was diagnosed with post-concussive syndrome – the upshot of which was memory issues, dizziness, headaches, nausea, cloudy thinking, and mental confusion. *Id*. Additionally, Plaintiff has a history of chronic back pain, Graves' disease (an immune system disorder that results in hyperthyroidism), and a heart murmur. *Id*. at 2658.

In July of 2017, Plaintiff was evaluated by Katherine Wiebe, Ph.D. *See* AR at 706-23. Given the nature of Plaintiff's psychological issues, Dr. Wiebe performed a clinical interview, reviewed Plaintiff's medical records, and administered the following procedures: the Barona Estimate, the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)-Form A, the Annotated Mini Mental State Examination (AMMSE), the Clock-drawing task, Trail Making Test Parts A & B, the Beck Depression Inventory (BDl-11), the Beck Anxiety inventory (BAI), the Posttraumatic Stress Checklist for DSM-5 (PCL-5), the Millon Clinical Multiaxial Inventory-IV (MCMI-IV), and a Mental Status/Psychiatric Symptoms Sheet. *See id*. at 710. Dr. Wiebe's assessment indicated that Plaintiff has a moderate to severe impairment in executive, language, memory, and visual/spatial functioning; that she has overall moderate attention/concentration impairment; that she has mild sensorimotor impairment; and, that Plaintiff's overall intellectual functioning is within the normal range. *Id*. at 719. As to her emotional functioning, Plaintiff's results revealed a dire picture of someone who had virtually no residual ability to cope. *See id*. at 712-20 (setting forth a detailed account of the manifestations of Plaintiff's emotional dysfunction).

Thus, in 2017, Dr. Wiebe diagnosed Plaintiff with a recurrent and severe major depressive disorder; posttraumatic stress disorder; generalized anxiety disorder; a personality disorder with schizoid, paranoid, and negativistic personality traits, and avoidant personality features. *Id*. at 720. In other words, Dr. Wiebe found that Plaintiff has severe depression, psychotic symptoms, severe

4

1  anxiety, persistent post-trauma stress, and possible somatization tendencies, and long-term
2  personality disorder characteristics. *Id*. at 719. Dr. Wiebe also found that Plaintiff's psychiatric
3  and cognitive functioning problems affect her ability to attend to, remember, and follow through
4  with directions and tasks; that she has difficulties with emotional regulation and with social
5  interactions; that she has problems with severe depression and anxiety, dependency, distractibility,
6  moodiness, distrustfulness, hopelessness, low energy, suspiciousness, hypervigilance, anger,
7  apprehensiveness, sleep problems, and somatic symptoms; and, that because she is socially
8  withdrawn and fearful, she would have difficulties relating to and communicating effectively with
9  supervisors, co-workers, and with the public in a job. *Id*. Dr. Wiebe found marked impairments
10 (indicating a total inability to function) in Plaintiff's abilities: in being able to respond
11 appropriately to changes in a routine work setting and deal with normal work stressors; in being
12 able to complete a normal workday and workweek without interruptions from psychologically
13 based symptoms; in being able to maintain regular attendance and be punctual within customary,
14 usually-strict tolerances; in being able to get along with, work with, and handle conflicts with
15 others; and, in being able to interact appropriately with the general public. *Id*. at 723. As to
16 Plaintiff's ability to understand, remember and carry out detailed instructions, and in her ability to
17 maintain attention and concentration for two-hour segments – Dr. Wiebe found moderate to
18 marked impairment. *Id*. Plaintiff's abilities regarding simple instructions, however, were found to
19 be attended with only mild impairment. *Id*.

20 In August of 2018, Plaintiff was evaluated by Laura Jean Catlin, Psy.D. *Id*. at 814-34. Dr.
21 Catlin performed a clinical interview, reviewed Plaintiff's medical records and – in addition to
22 administering the WAIS-IV (Wechsler Adult Intelligence Scale) IQ test – she administered the
23 same battery of tests that Dr. Wiebe had administered the previous year. *Id*. at 814. This time,
24 Plaintiff's cognitive function appeared to be severely impaired (likely due to the automobile
25 accident): her immediate and delayed memory functioned in the extremely low range (*see id.* at
26 819); her language and visual/special abilities were similarly situated in the extremely low range
27 (*see id.* at 820); and, as to the ability to pay attention, Plaintiff scored in the mildly impaired range
28 (*see id.*). Emotionally speaking, Plaintiff's results were largely similar to those found by Dr.

5

Wiebe during the previous year's evaluation. *See id.* at 820-22 (setting forth the manifestations Plaintiff's severe depression, anxiety, and PTSD symptoms). Dr. Catlin diagnosed Plaintiff with bipolar I disorder (depressive episodes with mixed features); PTSD; generalized anxiety disorder; and, as a result of the above-mentioned automobile collision, a traumatic brain injury. *Id*. at 822. Plaintiff's intellectual functioning was measured to be situated in the low average range – with a full-scale IQ score of 89. *Id*. at 823. Dr. Catlin found that Plaintiff will have great difficulty functioning in the workplace due to her difficulty in understanding, remembering, and applying information that might be given to her; she would have difficulty learning new tasks, or taking instructions from supervisors; her mental health symptoms would make interacting with others very difficult; her anxiety and depressive symptoms combine to primer her to be more irritable, emotionally sensitive, and unable to navigate most social interactions; her hypervigilance and her exaggerated startle response would make paying attention to and concentrating on job requirements very difficult; her symptoms would combine to render concentration and keeping pace nearly impossible; her ability to persist through frustrating or challenging work assignments is significantly diminished; she would be unable to organize herself such as to be on time and show up consistently for employment; her ability to function independently, appropriately, effectively, and on a sustained basis is "very limited"; due to her lack of internal resources to manage stress and mental demands, she is also vulnerable to decompensation; she has only a minimal capacity to adapt to changes in the environment or to the demands that are not already part of her life; and, lastly, Dr. Catlin found that her executive functions such as impulse control, frustration tolerance, and stress response are all impaired. *Id*. at 823-24. In short, Dr. Catlin found that Plaintiff has extreme and marked impairment in virtually every single category of ability required for one to function in a workplace. *See id*. at 824-25 (finding Plaintiff's limitations to be marked or extreme in 20 out of 23 categories). Thus, in 2018, Dr. Catlin found that: Plaintiff has had multiple episodes of decompensation within a 12-month period; that, on average, Plaintiff's symptoms would result in her absence from work for more than 4 days per month; and, that due Plaintiff's mental impairments, she could not be expected to perform in the workplace. *See id*. at 832-24.

1     Two months later, at the request of the state disability agency, Plaintiff was evaluated by
2  Maria Kerosky, Ph.D. *See id*. at 744-50. Unlike Drs. Wiebe and Catlin, Dr. Kerosky did not
3  administer the diagnostic instruments geared towards evaluating Plaintiff's emotional functioning
4  – instead, Dr. Kerosky only administered cognitive functioning tests (the Trail Making Test (both
5  parts) and the Wechsler IQ and memory tests). *See id*. at 744. Without delving into Plaintiff's
6  background (as had been done by Drs. Wiebe and Catlin), Dr. Kerosky measured Plaintiff's full-
7  scale IQ score at 86 (low average range), and diagnosed Plaintiff with an unspecified depressive
8  disorder; and unspecified anxiety disorder; and R/O posttraumatic stress disorder. *Id*. at 744-49.
9  Nevertheless, Dr. Kerosky found that Plaintiff would have moderate to marked difficulties in her
10 abilities: to maintain pace and persistence in performing simple, repetitive tasks; to adapt to
11 stressors in the workplace setting; and, to complete a normal workday/workweek without
12 interruptions related to her psychological condition. *Id*. at 750. She found that Plaintiff would have
13 marked difficulty with performing complex work tasks with the required persistence and pace. *Id*.
14 She also found mild to moderate impairment as to the aspects of workplace functioning. *Id*.

15    Plaintiff was also evaluated twice by Sokley Khoi, Ph.D. – once before, and once after the
16 previous remand from this court. *See id*. at 1601-07, 2087-90. At the request of the state disability
17 agency, Plaintiff was first evaluated by Dr. Khoi on December 17, 2019. *Id*. at 2087. As was the
18 case with Dr. Kerosky's evaluation, Dr. Khoi did not administer the diagnostic instruments geared
19 towards evaluating Plaintiff's emotional functioning – instead, Dr. Khoi only administered the
20 Trail Making Test (both parts), the Wechsler IQ and memory tests, and the Wide Range
21 Achievement Test. *Id*. Dr. Khoi's report – like Dr. Kerosky's – did not venture to delve into
22 Plaintiff's history of trauma or her emotional condition to any significant degree. *See id*. at 2087-
23 90. Dr. Khoi merely noted the results of the cognitive testing she had administered (including a
24 full-scale IQ score of 96) and diagnosed Plaintiff with an unspecified depressive disorder. *Id*. at
25 2089. She then concluded, without much explanation, that Plaintiff would only experience mild to
26 moderate limitations in four out of seven categories of work-related abilities, while experiencing
27 no limitations in the other three categories. *Id*. at 2090.
28    Following the previous remand from this court, Dr. Khoi evaluated Plaintiff again on

October 19, 2021. *See id*. at 1601-07. On this occasion, she administered a smaller subset of the same battery of cognitive functioning tests (namely, the Trail Making Test (both parts), and the Wechsler IQ and memory tests) without administering any of the diagnostic instruments geared towards emotional functioning (as had been done by Drs. Wiebe and Catlin). *See id*. However, in this report, Dr. Khoi devoted a few more sentences to describing Plaintiff's history of trauma and diagnosed her with major depressive disorder <u>and</u> PTSD. *See id*. at 1601, 1603. In the end, and again without much explanation, Dr. Khoi noted a full-scale IQ score of 94 and opined that Plaintiff's limitations were mild to moderate in three out of seven categories of work-related abilities, while opining that she had no limitations in the other four categories. *Id*. at 1604.

As to the last of the six times that Plaintiff underwent a psychological evaluation in this case – three months before the previous remand from this court, in April of 2021, Plaintiff was evaluated for a second time by Dr. Catlin. *See id*. at 2654-62. On this occasion, Dr. Catlin conducted a clinical interview and a mental status examination; she reviewed Plaintiff's medical records (including the reports of Drs. Wiebe, Kerosky, and Khoi); and she administered the Beck Depression Inventory. *Id*. at 2655. During this evaluation, Dr. Catlin concluded that Plaintiff's abilities regarding working at an appropriate and consistent pace and completing tasks in a timely manner would be precluded by more than 20% due to her psychological condition. *Id*. at 2661. As to the ability to sustain an ordinary routine and regular attendance at work, and the ability to work a full day without needing more than the allotted number or length of rest periods – Dr. Catlin concluded that Plaintiff suffers from a complete inability to function. *Id*. Consequently, she opined that Plaintiff would be expected to be off-task approximately 10% of the time. *Id*. at 2662.

It should also be noted that – at the second hearing conducted by the ALJ on January 31, 2023, that is, after the previous remand from this court – the vocational expert ("VE") testified that if someone suffered from mental and/or physical symptoms that kept them off-task for 10% of the time, such a person would not be employable. *See id*. at 997-98.

**THE ALJ DECISION**

The ALJ in this case engaged in the required five step sequential evaluation process. *See id*. at 928-44. At Step one, the ALJ determined Plaintiff meets the insured status requirements of

8

the Social Security Act through September 30, 2025, and that she had not performed substantial gainful activity from June 2, 2017 – her amended alleged onset date – to January 2, 2021. *Id*. at 931 (The noted "that claimant [had] requested a closed period of disability from June 2, 2017 to January 2, 2021."). At Step two, the ALJ determined Plaintiff's severe impairments are cervical spondylosis, spondylosis without myelopathy or radiculopathy in the lumbar region, cervical degenerative disc disease, lumbar degenerative disc disease, major depressive disorder, and post-traumatic stress disorder. *Id*. at 932.

At Step Three the ALJ found that no combination of Plaintiff's conditions met or equaled any listed impairment. *Id*. at 932-34. In formulating Plaintiff's residual functioning capacity ("RFC"), the ALJ determined that Plaintiff "had the residual functional capacity to perform light work [] except the claimant is able to frequently climb ramps/stairs, never climb ladders, ropes and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; is able to perform low stress work, which is defined as simple, routine tasks, involving no more than simple work-related decisions and occasional work place changes; work limited to no more than brief, occasional interaction with coworkers; and with no interaction with general public; would require an option to sit/stand at will." *Id*. at 934-43. At Step Four, the ALJ concluded that Plaintiff was incapable of performing her past relevant work. *Id*. at 943. Lastly, at Step Five, based on the testimony of the vocational expert, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as an "inspector and hand packager," an "assembler," or a "final inspector." *Id*. at 944. Consequently, the ALJ entered a non-disability finding as to the period between June 2, 2017 (Plaintiff's amended alleged onset date), and January 2, 2021 (the end date of the closed disability date submitted by Plaintiff for consideration). *Id*.

## DISCUSSION

As mentioned above, this case was previously remanded by this court pursuant to a stipulation to that effect by the Parties. *See id*. at 1077-78. Inherent in that stipulation, of course, was Defendant's concession that the ALJ had erred. *See id*. Now, for a second time in three years, Defendant again invites this court to "issue an order remanding Plaintiff's case for [still] further

administrative proceedings for an ALJ to reassess the persuasiveness of the opinions of Laura Caitlin, Psy.D.; (2) reassess Plaintiff's residual functional capacity; and (3) offer Plaintiff the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision." *See* Def.'s Mot. (dkt. 16) at 3. Defendant concedes that the ALJ's non-persuasiveness finding as to the opinions of Dr. Catlin was not supported by substantial evidence. *Id.* While the court greatly appreciates Defendant's candor, the court will decline the invitation to allow for any further proceedings for the reasons set forth below.

It is axiomatic that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). However, courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record – as is the case here – that a claimant is entitled to benefits. *Id.*

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when:

> [T]here are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true.

*Id.* at 1401. The doctrine promotes fairness and efficiency, given that an unnecessary remand for further proceedings can unduly delay income for those unable to work but entitled to benefits. *Id.* at 1398.

The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, each part of which must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

(1) the record has been fully developed and further administrative

> proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates a "serious doubt" that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *See id*.

Here, the ALJ gave the following reasons for rejecting Dr. Wiebe's opinions:

> Such extreme limitations are not consistent with the claimant's ability to care for three children on her own, her ability to function in the absence of taking any mental health medication, and the claimant's admission to relying on daily marijuana use. In addition, Dr. Wiebe relies in large part on subjective reports of the claimant even in the testing performed. The tests are cursory and not entirely objective. This Psychological Evaluation was submitted by the claimant's representative, and the claimant was referred to this provider by Dorian Morello, a staff attorney at Homeless Action Center. The tests performed are cursory tests and based in large part on claimant's subjective complaints.

*See* AR at 937. The court finds the ALJ's decision in this regard to be erroneous and unsupported by substantial evidence. First, while an inconsistency with Plaintiff's daily activities may sometimes be a proper basis on which to reject a medical opinion (*see Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)), not all activities of daily living are transferable to the workplace "where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ's error here is manifest in his failure to identify any specific conflict between caring for one's children at home (with help from others) and his view that doing so necessarily translates into the ability to function in the workplace. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Moreover, because claimants do not have to be "utterly incapacitated" to be eligible for disability benefits (*see Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

11

1    Cir. 1996)), it logically follows that they should not "be penalized for attempting to lead normal
2    lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Thus,
3    Plaintiff's efforts to care for her children at home was not a legitimate basis for rejecting Dr.
4    Wiebe's opinions. It should also not go without mention that (1) Dr. Wiebe was aware of the
5    extent of Plaintiff's efforts to care for her children; and (2) the ALJ appears to have misstated or
6    misapprehended the record in this regard. *See* AR at 710 (Dr. Wiebe's Report: – "Her children
7    usually stay with their grandparents, or her sister and her mother because she often feels
8    overwhelmed and unable to care for them and requires assistance.").

9          The court also finds that the ALJ erred in rejecting Dr. Wiebe's opinions based on the
10   notion that Plaintiff was not given any "mental health medication," because (1) Dr. Wiebe was
11   aware of this fact (thus, it is not a legitimate reason to find her opinions unpersuasive), and (2) an
12   ALJ may not play the role of a doctor by substituting his own lay opinion for that of a medical
13   professional (*see Pilgreen v. Berryhill*, 757 F. App'x 618, 619 (9th Cir. 2019); *see also Day v.*
14   *Weinberger*, 522 F.2d 1154, 1156-57 (9th Cir. 1975)). The ALJ also erred in rejecting Dr. Wiebe's
15   opinions because of the suggestion that she relied in large part on Plaintiff's subjective reports,
16   even in the testing performed; additionally, the ALJ also erred in stating (without any explanation)
17   that the tests were "cursory" and "not entirely objective." In addition to the testing and hearing
18   Plaintiff's reports, Dr. Wiebe also made her own observations. It cannot be disputed that her
19   assessment was, in all respects, a typical psychological evaluation. That it relied in part on
20   Plaintiff's self-reports is not a valid reason for rejecting it. *See Pilgreen v. Berryhill*, 757 Fed.
21   Appx. 618, 619 (9th Cir. Jan. 7, 2019); *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.
22   2017) ("[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the
23   same manner to opinions regarding mental illness."); *Poulin v. Bowen*, 817 F.2d 865, 873, 260
24   U.S. App. D.C. 142 (D.C. Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed."); *see*
25   *also Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 612 (9th Cir. 2011) ("[M]ental
26   health professionals frequently rely on the combination of their observations and the patient's
27   reports of symptoms (as do all doctors).").

28         Then there is the ALJ's statement that Dr. Wiebe's opinion was due to be rejected because

1    Plaintiff was referred to Wiebe by her own counsel – an attorney working for the Homeless Action
2    Center. This is – perhaps – the most puzzling of the reasons given by the ALJ for rejecting Dr.
3    Wiebe's opinions. It presumes, baselessly, that Dr. Wiebe surrenders her professionalism and
4    renders pre-arranged conclusions – like a hired gun – to anyone from whom she might receive a
5    paycheck. The court finds that the ALJ's suggestion to this effect has no evidentiary support
6    whatsoever – let alone being based in substantial evidence. The purpose for which medical or
7    psychological examinations and reports are obtained does not provide a logial basis for rejecting
8    them, and an examining professional's findings are entitled to no less weight when the
9    examination is procured by the claimant (or her attorney) than when it is obtained by the
10   Commissioner. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *see also Patino v.
11   Berryhill*, 2017 U.S. Dist. LEXIS 117151, *14 (C.D. Cal. Jul. 26, 2017). Having found that the
12   ALJ improperly rejected Dr. Wiebe's opinions, those opinions will now be credited as true.

13   As to Dr. Catlin's opinions, the ALJ fared no better. Dr. Catlin's opinions were rejected on
14   largely the same and similar bases. *See* AR at 941-42. However, given that Defendant has
15   conceded that the ALJ's rejection of Dr. Catlin's opinion (and the formulation of the ensuing
16   RFC) was not based on substantial evidence (*see* Def.'s Mot. (dkt. 16) at 3-4), the court does not
17   need to engage in a detailed point-by-point refutation of the ALJ's erroneous rejection of Dr.
18   Catlin's opinions. Accordingly, Dr. Catlin's opinions will now also be credited as true.

19   In light of the above-discussed evidence, it is abundantly clear to the court that Plaintiff
20   has in fact been disabled during the entire period between June 2, 2017 (Plaintiff's amended
21   alleged onset date), and January 2, 2021 (the end date of the closed disability date submitted by
22   Plaintiff for consideration). It is equally clear that further administrative proceedings would be
23   useless because the ALJ would be required to find Plaintiff disabled on remand. In light of the
24   opinions of Drs. Wiebe and Catlin (from 2017, 2018, and 2021), Plaintiff's plethora of mental
25   impairments at least equal the severity of the Step Three listing criteria for depression (*see* Listing
26   12.04(A)(1) (depressive disorder) 20 C.F.R. Pt. 404, Subpt. P, app. 1, §12.04), and for PTSD (*see*
27   Listing §12.15 (PTSD) 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.15). Furthermore, even putting
28   aside the fact that Plaintiff clearly meets or equals the severity of the pertinent criteria of two

United States District Court
Northern District of California

1  separately listed impairments, the evidence discussed above would also compel a disability finding
2  during the formulation of the RFC. The combined effects of her debilitating depression, her
3  anxiety disorder, and her PTSD can only result in the clear conclusion that – during the disability
4  period in question – Plaintiff had no residual capacity to function in the workplace.

5        Lastly, the ALJ would also be required on remand to find Plaintiff disabled at Step five
6  based on the VE's testimony. The VE testified that someone with Plaintiff's education and
7  background would not be employable if they were to consistently be off-task 10% of the time. *See*
8  AR. at 997-98. Given Dr. Catlin's 2021 opinion to the effect that Plaintiff would be off-task 10%
9  of the time (*see id*. at 2662), the ALJ would be required to find Plaintiff disabled based on the
10 VE's testimony at Step Five. Thus, the court finds that all of the credit-as-true factors are satisfied.

11       At this juncture, the court will note that in cases where each of the credit-as-true factors is
12 met, it is generally only in "rare instances" where a review of the record as a whole gives rise to a
13 "serious doubt as to whether the claimant is actually disabled." *Revels v. Berryhill*, 874 F.3d 648,
14 668 n.8 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1021). This is not such a case. Here, the court
15 is satisfied that the ALJ's unsupported conclusions (in two separate decisions spanning several
16 years of consideration) were thoroughly negated by the overwhelming tide of the record evidence
17 which conclusively and convincingly establishes Plaintiff's longstanding disability such that no
18 further inquiry is necessary.

19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

# CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's Motion for Summary Judgment (dkt. 10) is **GRANTED**, Defendant's Cross-Motion (dkt. 16) seeking remand for further proceedings is **DENIED**. The ALJ's finding of non-disability is **REVERSED**, and the case is **REMANDED** for the immediate calculation and award of appropriate benefits consistent with the findings and holdings expressed herein.

**IT IS SO ORDERED.**

Dated: September 25, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge